UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| EDGEFIELD HOLDINGS, L.L.C., | § | |
|---|---|---|
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:19-CV-1495-B |
| | § | |
| EINBINDER & DUNN, L.L.P., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Einbinder & Dunn, L.L.P.'s Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 11). For the reasons that follow, the Court **DENIES** the motion (Doc. 11) and **TRANSFERS** the case to the Southern District of New York.[1] Plaintiff Edgefield Holdings, L.L.C.'s Objection to Einbinder's Reply (Doc. 19) is **DENIED in part** and **MOOTED in part**.

## I.
## BACKGROUND[2]

On August 5, 2015, the United States District Court for the Southern District of Florida entered a Final Judgment in favor of The Learning Experience Systems, L.L.C. against Creative

---

[1] After this motion was filed, Plaintiff Edgefield Holdings, L.L.C. filed its Second Amended Complaint. *See* Doc. 17. This filing was in response to the Court's show cause order, which ordered Edgefield to properly plead subject matter jurisdiction. *See* Doc. 15, Order to Show Cause. Subsequently, the Second Amended Complaint amended only two paragraphs, to properly plead subject matter jurisdiction. *See* Doc. 17, 1 n.1. Thus, the filing of the Second Amended Complaint does not render this motion moot.

[2] The Court derives its factual account from the allegations contained in Plaintiff Edgefield Holdings, L.L.C.'s Second Amended Complaint (Doc. 17). *See D.J. Invs. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 546 (5th Cir. 1985).

American Education and K. and B. Loganathan[3] (collectively, the Judgment Debtors) in the amount of $984,074.31. Doc. 17, Second Am. Compl., ¶ 5. The defendant here, Einbinder, represented Creative American and the Loganathans in the Florida action. *Id.* ¶ 6. After judgment was entered in that action, the Florida court certified the Final Judgment for filing in Colorado, Texas, and California. *Id.* ¶ 8; *see also id.* Ex. B (the order granting certification of judgment).

On September 2, 2015, The Learning Experience filed a Motion for Charging Order in the Northern District of Texas (hereinafter, the Texas action), *Id.* ¶ 9, "in aid of enforcement" of the Final Judgment. *Id.*, Ex. D, ¶ 5 (Motion for Charging Order). The motion explained that the Judgment Debtors held shares in Aces Creative American Investments LLC and listed Aces's Texas properties. *Id.* ¶¶ 2–3. The Learning Experience Systems sought any interest that the Judgment Debtors received from their membership interests in Aces. *Id.* Ex. D, ¶ 5. On September 9, 2015, Aces Creative sold one of its properties in Texas for $94,635.34, which was wired to Einbinder. *Id.* ¶ 10. Then, on October 29, 2015, Judge Lindsay of the Northern District of Texas entered a charging order in the Texas Action, which gave The Learning Experience "the right to receive any distribution to which [the Judgment Debtors] would otherwise be entitled in respect of the membership interest held by [the Judgment Debtors] in Aces Creative . . . ." *Id.* ¶ 11; *see also id.*, Ex. F, 3–4 (Agreed Charging Order).

On September 23, 2016, The Learning Experience assigned all of its rights, title, and interest to the Final Judgment in the Florida Action to Edgefield. *Id.* ¶ 16. But earlier, on January 11, 2016, Aces Creative sold another one of its Texas properties. *Id.* ¶ 12. Edgefield alleges that the funds from

---

[3] The Loganathans' full names are Bernard Loganathan and Katijah Beeve Shaik Alaudeen-Loganathan. Doc. 17, First Am. Compl., ¶ 5.

the sale of the two Texas properties should have been distributed to The Learning Experience under the charging order but were instead fraudulently transferred to Einbinder. *Id.* ¶¶ 10, 13–14. And finally, on May 4, 2017, an attorneys' fee award of $83,958.76 was awarded in favor of The Learning Experience against Creative American and the Loganathans in the Florida Action as well. *Id.* ¶¶ 15, 17.

After learning of Aces Creative's transfers to Einbinder, Edgefield contacted Einbinder, who allegedly refused to return or transfer over the proceeds to Edgefield. *Id.* ¶ 17. Subsequently, Edgefield brought two causes of action pursuant to the Texas Uniform Fraudulent Transfer Act (TUFTA) against Einbinder: (1) Fraudulent Transfer under Texas Business and Commerce Code § 24.005(A)(1)–(2), and (2) Fraudulent Transfer under Texas Business and Commerce Code § 24.006(A). *Id.* ¶¶ 19–36.

Einbinder then brought this Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 11). All briefing has been submitted, and the motion is now ripe for review.

## II.
## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(2) allows for the dismissal of an action in which the court lacks personal jurisdiction over the defendant. A federal court may assert jurisdiction over a nonresident defendant in a diversity suit if the state's long-arm statute applies and due process is satisfied under the Fourteenth Amendment to the United States Constitution. *Cycles, Ltd. v. W.J. Digby, Inc.*, 889 F.2d 612, 616 (5th Cir. 1989). Texas courts have interpreted the Texas long-arm statute as "extending to the limits of due process." *Bullion v. Gillespie*, 895 F.2d 213, 215 (5th Cir. 1990). Accordingly, to determine whether it may assert jurisdiction under the Texas long-arm

statute, a federal court must determine whether jurisdiction comports with federal constitutional guarantees of due process. *Id.* at 216.

"The due process clause of the Fourteenth Amendment, as interpreted by the Supreme Court, permits the exercise of personal jurisdiction over a nonresident defendant when (1) that defendant has established 'minimum contacts' with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend 'traditional notions of fair play and substantial justice.'" *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 418 (5th Cir. 1993) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "Both prongs of the due process test must be met" for the Court to exercise personal jurisdiction over a defendant. *See id.*

A nonresident defendant's minimum contacts may either support an assertion of specific or general jurisdiction. *WNS Inc. v. Farrow*, 884 F.2d 200, 202 (5th Cir. 1989). A court may exercise specific jurisdiction when a cause of action arises out of a defendant's purposeful contacts with the forum. *Dalton v. R & W Marine, Inc.*, 897 F.2d 1359, 1361–62 (5th Cir. 1990). Alternatively, a court is said to have general jurisdiction when a defendant has engaged in continuous and systematic contacts with the forum. *Id.*

The party seeking to invoke federal jurisdiction bears the burden of establishing the requisite minimum contacts. *WNS*, 884 F.2d at 203. Further, "uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a *prima facie* case for personal jurisdiction exists." *D.J. Invs.*, 754 F.2d at 546 (citations omitted).

**III.**

**ANALYSIS**

The parties dispute whether the Court has personal jurisdiction over Einbinder. Specifically, Einbinder argues that it was a mere passive transferee of the proceeds the Judgment Debtors received from the sale of Aces's Texas properties, and thus this Court cannot assert specific personal jurisdiction over it. Doc. 12, Def.'s Br., 8. On the other hand, Edgefield argues that, at the very least, Einbinder was willfully blind to the fact that the Judgment Debtors transferred the sales' proceeds to Einbinder to avoid paying the Final Judgment. Doc. 16, Pl.'s Resp., 7.

The Court will first analyze what facts must be alleged under the TUFTA to sufficiently plead specific personal jurisdiction.[4] Next, the Court will analyze the parties' arguments and explain why Edgefield has not properly pled specific personal jurisdiction in this case. Finally, the Court will explain why it must transfer, rather than dismiss, this case to the Southern District of New York.

A.   *Personal Jurisdiction Under the TUFTA*

Under the TUFTA, "a plaintiff must prove that (1) she is a 'creditor' with a claim against a 'debtor'; (2) the debtor transferred assets after, or a short time before, the plaintiff's claim arose; and (3) the debtor made the transfer with the intent to hinder, delay, or defraud the plaintiff." *Dontos v. Vendomation NZ Ltd.*, 582 F. App'x 338, 344 (5th Cir. 2014) (per curiam) (citing *Nwokedi v. Unlimited Restoration Specialists, Inc.*, 428 S.W.3d 191, 203–05 (Tex. App.—Houston [1st Dist.] 2013 pet. denied)). A "'subsequent transferee of the asset' is liable under TUFTA, unless the transferee took the assets 'in good faith and for a reasonably equivalent value.'" *Id.* (quoting *Spring Street*

---

[4] Edgefield has conceded that general personal jurisdiction over Einbinder does not exist. *See* Doc. 16, Pl.'s Resp., 5 ("Here, the inquiry is whether specific jurisdiction exists.").

*Partners-IV, L.P. v. Lam*, 730 F.3d 427, 438 (5th Cir. 2013)). However, if the original debtors (here, the Judgment Debtors) have fraudulent intent, "to allege a *prima facie* case of specific personal jurisdiction based on TUFTA liability [against a transferee of the original debtors], the Plaintiffs must allege more than mere passive acceptance of a fraudulent asset transfer that harmed a creditor in the forum state; they must also allege some purposeful conduct directed at a creditor in the forum state." *Id.* at 347 (citing *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 400 (5th Cir. 2009)).[5]

B.  *Whether the Court has Specific Personal Jurisdiction over Einbinder*

Einbinder raises two arguments for why the Court does not have specific personal jurisdiction over it. First, Einbinder argues that Edgefield has not established that the allegedly "fraudulent transfers arose from or are related to activity conducted within Texas." Doc. 12, Def.'s Br., 9–10. In doing so, Einbinder relies on *TransFirst Group, Inc. v. Magliarditi*, 237 F. Supp. 3d 444 (N.D. Tex. 2017). Doc. 12, Def.'s Br., 10. In *TransFirst*, the district court found that a Texas judgment alone was insufficient to establish the proper connection to Texas for personal jurisdiction. *TransFirst Gr., Inc.*, 237 F. Supp. 3d at 454. Einbinder believes that, here, like in *TransFirst*, neither party is a Texas citizen, the plaintiff has not suffered any harm in Texas, and "the only connection Edgefield has to Texas is its judgment issued in the Texas Action." Doc. 12, Def.'s Br., 10. Moreover, Einbinder points out, Einbinder was not a party to the Texas action or the subsequent charging order. *Id.* at 10–11. Therefore, Einbinder argues, the Texas action and the subsequent charging order "are insufficient to allow the court to exercise personal jurisdiction . . . ." *Id.* at 11.

Second, Einbinder argues that because it was "a mere passive transferee" of the allegedly

---

[5] The parties do not make any argument as to the intent of the Judgment Debtors. Thus, the Court assumes, solely for the purpose of this order, that the Judgment Debtors had the requisite fraudulent intent.

fraudulent transfer, Edgefield has not established that Einbinder has the necessary minimum contacts with Texas for this Court to exercise personal jurisdiction. *Id.* And, although Einbinder received wire transfers from Aces, "the [c]omplaint does not allege them to have been arranged by [Einbinder] . . . . There is no allegation that [Einbinder] took part in any fraud or engaged in any fraud." *Id.* Einbinder argues that its receipt of the assets from the property sales in Texas were "random and fortuitous" and payment for its attorney services rendered to the Judgment Debtors in connection with the Florida action, not payment in connection with a fraudulent transfer. *Id.* at 11–12. And, Einbinder explains, any allegations to the contrary in the complaint "are so vague, overgeneralized, or otherwise conclusory that they should not be countenanced by this Court." *Id.* at 11–12 (citing *Head v. Las Vegas Sands, LLC*, 298 F. Supp. 3d 963, 969 (S.D. Tex. 2018)).

In response, Edgefield disputes that Einbinder was "a mere 'passive transferee'" of Aces's property sales. Doc. 16, Pl.'s Resp., 7. Edgefield notes that Einbinder represented the parties subject to the charging order in the Florida Action. *Id.* Moreover, Edgefield explains that Einbinder represented those parties when the judgment and charging order were entered in the Texas Action, when the Texas properties were sold, and when the assets from the sale were transferred to Einbinder. *Id.* Edgefield believes that Einbinder was aware that the Judgment Debtors had assets in Texas, as Einbinder argued against the motion to certify the judgment in Texas. *Id.* (citing Doc. 16-2, Order Granting Def.'s Mot. to Certify J.,). With this knowledge, Edgefield argues, "[a]t best, [Einbinder] turned a willing blind eye" and "[a]t worst, [] coordinated with the Judgment Debtors to divert the funds to itself . . . ." *Id.* Edgefield points to the fact that Einbinder's wiring instructions were "at the closing table of the two sales" of property at issue. *Id.*

As further evidence, Edgefield explains that the charging order was an agreed order and that

Einbinder's affidavit is "silent as to the role [Einbinder] played with respect to the Agreed Charging Order." *Id.* at 8. From this, Edgefield argues that Einbinder "likely participated in the formation of the *Agreed* Charging Order entered into by its clients it admits it was representing at the time." *Id.* Thus, to Edgefield, Einbinder could have reasonably anticipated being brought into court in Texas when it accepted the transfers. *Id.*

The Court concludes that it does not have specific personal jurisdiction over Einbinder. Edgefield has not established that Einbinder engaged in the "purposeful conduct" necessary to establish Einbinder's minimum contacts with Texas. *See Dontos*, 582 F. App'x at 347.

First, however, the Court notes that Einbinder's reliance on *TransFirst* is misplaced. Einbinder believes that *TransFirst* stands for the proposition that a "judgment, without more, [is] insufficient 'to allow the court to exercise personal jurisdiction over out-of-state defendants who were not parties to the underlying action in which the judgment was issued . . . .'" Doc. 12, Def.'s Br., 10 (citing *TransFirst*, 237 F. Supp. 3d at 454). And here, Einbinder argues, the Texas judgment and charging order, "*without more*, are insufficient" for this Court to exercise personal jurisdiction. *Id.* at 11. (emphasis added).

But there is more. In *TransFirst*, "there [were] no allegations that the fraudulent transfers occurred in Texas or involved any Texas entities." *TransFirst*, 237 F. Supp. 3d at 453–54. Here, in contrast, the sales that were part of the allegedly fraudulent transfer took place in Texas. Doc. 17, Second Am. Compl., ¶¶ 10, 12; 17-5 & 17-7, Wiring Requests.

Fortunately for Einbinder, this does not end the Court's inquiry. *TransFirst* was applying the effects test of *Calder v. Jones*, 465 U.S. 783 (1984). In *Guidry v. U.S. Tobacco Company*, the Fifth Circuit explained that *Calder* held that "an act done outside the state that has consequences or

effects within the state will suffice as a basis for jurisdiction in a suit arising from those consequences if the effects are seriously harmful and were intended or highly likely to follow from the nonresident defendant's conduct." 188 F.3d 619, 628 (5th Cir. 1999) (citing *Calder*, 465 U.S. at 789–90). But, "[t]he key to *Calder* is that the effects of an alleged intentional tort are to be assessed as *part* of the analysis of the defendant's relevant contacts with the forum." *Panda Brandywine Corp. v. Potomac Elec. Power. Co.*, 253 F.3d 865, 869 (5th Cir. 2001) (per curiam) (citation and quotation marks omitted).

This means that "[t]he 'effects' test in *Calder* does not supplant the need to demonstrate minimum contacts that constitute purposeful availment . . . ." *Mullins*, 564 F.3d at 400 (citing *Panda Brandywine Corp.*, 253 F.3d at 869).[6] And in the context of TUFTA, that means "alleg[ing] some purposeful conduct [by the transferee] directed at a creditor in the forum state." *Dontos*, 582 F. App'x at 347 (citing *Mullins*, 564 F.3d at 400). As the Supreme Court in *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984), explained, accepting "checks drawn on a Texas bank is of negligible significance for purposes of determining whether [someone] had sufficient contacts in Texas . . . . Such unilateral activity of another party . . . is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify" personal jurisdiction. 466 U.S. at 416–17.

---

[6] The Court doubts whether *Calder* is actually helpful to its analysis here. *Calder* seems reserved for the limited scenario in which a plaintiff is able to bring suit over a nonresident defendant in a forum state where the alleged wrongful acts did not take place, as the defendant knew the injurious effects of its actions would take place in the forum state because, *interi alia*, the plaintiff resides in the forum state. *See Calder*, 465 U.S. at 789–90; *see also Revell v. Lidov*, 317 F.3d 467, 473 (5th Cir. 2002) (explaining how "the plaintiff's residence in the forum, and suffering of harm there, will not alone support jurisdiction" under *Calder*"). Here, however, Edgefield is not attempting to bring suit in Georgia, its state of residence. Doc. 17, First Am. Compl., ¶ 1.

Here, there are no allegations in the SAC that allege that Einbinder was an active participant in Aces's transfer. All allegations about active participation with respect to the transfer involve Aces, not Einbinder. *See* Doc. 17, Second Am. Compl., ¶ 24(a) ("Aces Creative made the transfer with actual intent . . . ."); *id.* ¶ 25 ("Aces Creative (and its prinicipals' misconduct) satisfies many of the intent elements in the Fraudulent Transfer statute."). And the paragraphs that mention Einbinder do not allege its purposeful participation in any scheme. *See id.* ¶ 31 ("Aces Creative's payment of sales proceeds to Einbinder was an indirect transfer to the [sic] B. Loganathan and K. Loganathan . . . .").

Moreover, despite Edgefield's arguments to the contrary, the timeline of the events at issue, and the exhibits attached to the SAC also do not demonstrate purposeful conduct on the part of Einbinder. This is so even though the Court must "accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts." *Dontos*, 582 F. App'x at 345 (citation and quotation marks omitted).

For example, Edgefield argues that the timeline of the events that took place in the Florida action make it clear that Einbinder "[a]t best . . . turned a willing blind eye" to the fraudulent transfer of assets, or "[a]t worst, [] coordinated" the transfers. Doc. 16, Pl.'s Resp., 7. However, as Einbinder explains in its Reply, Edgefield bases this belief not on factual allegations, but instead on conclusory and implausible inferences from Edgefield's prior role in representing the Judgment Debtors in Florida. Doc. 18, Def.'s Reply, 7.[7] But Edgefield has not shown any connection between

---

[7] Edgefield filed an objection to the Reply, moving to strike the Reply Brief. *See* Doc. 19, Objs to & Mot. to Strike. In the objection, Edgefield alleges that the Reply exceeds 10 pages, in violation of Local Rules, and contains new arguments and evidence, including an affidavit. *Id.* at 1–2. The Reply does not exceed 10 pages, however, and the Court does not rely on the affidavit in this Order. And Edgefield does not specify

Einbinder and the resulting Texas case and charging order. In fact, Edgefield surmises that due to Einbinder's prior relationship with the Judgment Debtors, which allegedly occurred contemporaneously with the Texas action, it "likely participated in the formation of the *Agreed Charging Order* . . . ." Doc. 16, Pl.'s Resp., 8. However, "the prima-facie-case requirement does not require the court to credit conclusory allegations, even if uncontroverted." *Panda Brandywine Corp.*, 253 F.3d at 869. To the contrary, Mr. Einbinder's affidavit explains that he and his firm did not know about the charging order until contacted by Edgefield's counsel about the alleged fraudulent transfers, nor did Einbinder represent the Judgment Debtors in Texas. Doc. 12-2, Aff. of Michael Einbinder. Edgefield does not have any evidence to rebut the affidavit on this point.[8] Thus, even if willful blindness was enough to demonstrate purposeful conduct, see Doc. 16, Pl.'s Resp., 7, no alleged facts support such an inference.

Additionally, Edgefield contends that "one need not seriously wonder how Einbinder's wiring instructions appeared at the closing table of the two sales[.]" Doc. 16, Pl.'s Resp., 7. But the outbound wires to Einbinder show only that the Judgment Debtors wired money to Einbinder, not that Einbinder requested, or negotiated to receive, the Texas sales' proceeds. *See* Docs. 17-5 & 17-7, Wiring Requests; *see also Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 416 (explaining that there were insufficient contacts when "[t]here [was] no indication that [the defendant] ever

---

other places in which the Reply contains new arguments or evidence. Thus, Edgefield's Objection (Doc. 19) is **OVERRULED** in part and **MOOTED** in part.

[8] Instead, Edgefield alleges that the affidavit does not attest to personal knowledge and lacks a sufficient jurat. Doc. 16, Pl.'s Resp., 8. But Mr. Einbinder does attest to personal knowledge. *See* Doc. 12-2, Aff. of Michael Einbinder, ¶ 1. Additionally, Mr. Einbinder swore his affidavit before a notary, see *id.* at 4, which exempted the affidavit from the "penalty of perjury" requirement of 28 U.S.C. § 1746 for unsworn statements.

requested that the checks be drawn on a Texas bank or that there was any negotiation . . . with respect to the location or identity of the bank on which checks would be drawn").

In sum, Edgefield has not alleged a prima-facie case that Einbinder actively participated in the fraudulent transfer of funds. And without such purposeful participation, Einbinder cannot be subject to suit in Texas. *See Dontos*, 582 F. App'x at 347 (citing *Mullins*, 564 F.3d at 400). Einbinder does not have the minimum contacts necessary for this Court to exercise personal jurisdiction over it. *Ruston Gas Turbines, Inc.*, 9 F.3d at 418. Accordingly, the Court does not address the parties' arguments as to the second prong of the personal jurisdiction analysis.

C.    *Whether the Case Should Be Dismissed or Transferred*

By concluding that it lacks personal jurisdiction over this case, the Court is confronted with two options. First, it may dismiss the action under Federal Rule of Civil Procedure 12(b)(2). Or, it can transfer the case under 28 U.S.C. § 1406(a) to a venue in which it could have been brought if doing so is "in the interest of justice . . . ." 28 U.S.C. § 1406(a). Specifically, "Section 1406(a) allows a transfer where the first forum chosen is improper due to the existence of some obstacle to adjudication on the merits." *Herman v. Cataphora, Inc.*, 730 F.3d 460, 466 (5th Cir. 2013) (citation omitted). And although "[t]he statute specifically refers to 'laying venue in the wrong division or district' . . . . [A] division or district may be 'wrong' under Section 1406(a) when the original court lacks personal jurisdiction." *Id.* (citing *Bentz v. Recile*, 778 F.2d 1026, 1028 (5th Cir. 1985)).

Edgefield asks the Court to transfer the case to the Southern District of New York should it find that it lacks personal jurisdiction over Einbinder. Doc. 16, Pl.'s Resp., 9. Einbinder does not respond to this request. The Court concludes that it should transfer this case.

First, venue would be proper in the Southern District of New York. Einbinder is a New York entity with its principal place of business in New York City, New York. Doc. 17, Second Am. Compl., 2 n.1. Venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the [s]tate in which the district is located[.]" 28 U.S.C. § 1391(b)(1). And an entity's residence for venue purposes is where personal jurisdiction could be exercised over it. § 1391(c)(2). The Southern District of New York has general personal jurisdiction over Einbinder. *See Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006) (explaining that general jurisdiction exists in the forum state where the defendant has "continuous and systematic general business contacts" (quotation marks omitted) (citing *Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 415)). Thus, venue and is proper in the Southern District of New York.

Second, by requesting the Court to transfer to the Southern District of New York, Edgefield has demonstrated that it intends to continue this litigation. To dismiss this case would force Edgefield to refile and would thus be inefficient. *See Springboards to Educ., Inc. v. Hamilton Cty. Read 20*, 2017 WL 3023489, at *6 (N.D. Tex. July 14, 2017) ("The decision to transfer is discretionary, and 'often made to prevent waste of time, energy and money . . . .'" (quoting *Autoflex Leasing-Dallas I, LLC v. Autoflex, LLC*, 2017 WL 713667, at *6 (N.D. Tex. Feb. 23, 2017))). Transferring the case to the Southern District of New York, then, is also in the interest of justice.

Therefore, transfer, rather than dismissal, is appropriate in this case.

## IV.

## CONCLUSION

A "[c]ourt cannot both dismiss and transfer" a case. *Haas Outdoors, Inc. v. Dryshod Int'l, LLC*, 347 F. Supp. 3d 266, 273 (N.D. Miss. 2018). For the foregoing reasons, Einbinder's motion to dismiss

for lack of personal jurisdiction (Doc. 11) is **DENIED** and the case is hereby **TRANSFERRED** to the Southern District of New York. Additionally, Edgefield's objection to Einbinder's reply brief (Doc. 19) is **DENIED in part** and **MOOTED in part**.

    SO ORDERED.

    SIGNED: December 31, 2019.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE